| | | |
|---|---|---|
| CHRISTOPHER C. WHIGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TANDS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On October 24, 2025, Christopher C. Whigham ("Whigham" or "plaintiff"), proceeding pro se, filed a complaint against Tands, Inc. ("Tands" or "defendant") in Nash County Superior Court [D.E. 1-3]. On November 19, 2025, Tands removed the action to this court [D.E. 1]. See 28 U.S.C. §§ 1331, 1441, 1446. On November 25, 2025, Tands moved to dismiss Whigham's complaint for failure to state a claim [D.E. 6] and filed a memorandum in support [D.E. 7]. See Fed. R. Civ. P. 12(b)(6). On December 4, 2025, the court notified Whigham about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 8]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).

On December 15, 2025, Whigham moved for leave to file an amended complaint [D.E. 11] and attached an amended complaint as an exhibit to his motion [D.E. 11-1]. On January 2, 2025, Tands responded in opposition to Whigham's motion for leave to amend, and alternatively, asked the court to construe the response in opposition as a motion to dismiss the amended complaint [D.E. 12]. As explained below, the court construes Whigham's motion for leave to amend the complaint as the filing of the amended complaint, construes Tands's response in opposition to Whigham's motion for leave to amend as a motion to dismiss the amended complaint, grants

Tands's motion to dismiss Whigham's federal claims, declines to exercise supplemental jurisdiction over Whigham's state-law claims, and remands the action to Nash County Superior Court.

## I.

Whigham is a 30-year-old African-American male who worked from June 6, 2024, to June 7, 2025, at a Bojangles restaurant in Rocky Mount, North Carolina. See [D.E. 1-9] 5; [D.E. 1-3] 2; [D.E. 11-1] 1–2. Tands is a North Carolina corporation with a principal place of business in Kinston, North Carolina. See [D.E. 1] 2. Tands operated the Bojangles where Whigham worked. See [D.E. 1-3] 2. In February 2025, a co-worker, Laquan Bell ("Bell"), threatened Whigham with a knife. [D.E. 11-1] 1–2; [D.E. 1-3] 2. On another occasion, Bell threatened Whigham with a hot pan. See [D.E. 11-1] 2; [D.E. 1-3] 2.

On June 6, 2025, Bell and another employee, Megan Morris ("Morris"), assaulted Whigham. See [D.E. 11-1] 2; [D.E. 1-3] 2; see also [D.E. 11-3] 1. Bell threw a biscuit roller into a sink near Whigham, causing water to splash on Whigham. See [D.E. 1-9] 5. Whigham told Bell that he got splashed. See id. Bell "confronted" and "punched" Whigham. Id. Morris also punched Whigham. See id. A manager intervened to stop the fight and called the police. See id. Morris and Bell fled the scene. See id. Whigham "did not punch anyone" and only protected himself from the "unprovoked assault." Id. Whigham made a police report. See id.

Whigham complained about the incidents to management. See [D.E. 11-1] 2; [D.E. 1-3] 2–3. On June 7, 2025, Tands terminated Whigham's employment. See [D.E. 1-9] 5; [D.E. 11-1] 2; [D.E. 1-3] 2.

On September 18, 2025, Whigham filed an amended EEOC charge of discrimination. See [D.E. 1-9] 5–7. In the charge, Whigham described the June 6, 2025 incident with Bell and Morris

and the termination of his employment and stated "that [Tands] discriminated and retaliated against" him. Id. at 5. On September 30, 2025, the EEOC issued a right to sue letter to Whigham. See [D.E. 1-8] 2. On October 8, 2025, the North Carolina Department of Labor issued Whigham a right to sue letter under the North Carolina Retaliatory Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-242(c). See [D.E. 1-7] 2.

On October 24, 2025, Whigham filed a complaint against Tands in Nash County Superior Court. See [D.E. 1-3]. On November 19, 2025, Tands removed the action to this court. See [D.E. 1]. On November 25, 2025, Tands moved to dismiss Whigham's complaint. See [D.E. 6]. On December 15, 2025, Whigham moved for leave to amend the complaint, and filed a proposed amended complaint and exhibits in support. See [D.E. 11]. On January 2, 2026, Tands responded in opposition, and alternatively, asked the court to construe Tands's response motion for leave to amend as a motion to dismiss the amended complaint. See [D.E. 12] 1 n.1.

In his complaint, Whigham alleges claims for (1) hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) wrongful termination in violation of North Carolina public policy; (3) failure to provide a safe work environment in violation of the Occupational Safety and Health Act; and (4) negligent hiring, retention, and supervision. See [D.E. 1-3] In the amended complaint, Whigham alleges three claims under Title VII: discrimination (claim one); hostile work environment (claim two); and retaliation (claim three). See [D.E. 11-1] 2. Whigham also alleges an "OSHA/REDA" retaliation claim (claim four). Id. Under North Carolina law, Tands alleges a wrongful termination claim (claim five) and a negligent retention and supervision claim (claim six). See id.

Case 5:25-cv-00745-D-RJ    Document 13    Filed 04/08/26    Page 3 of 17

## II.

Federal Rule of Civil Procedure 15(a)(1) permits amendment to a pleading once "as a matter of course no later than" 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court must "freely give leave when justice so requires." Id. When a plaintiff moves for leave to amend a complaint within the time for amendment as of right under Rule 15(a)(1), courts generally treat the motion to amend as the filing of the amended complaint. See St. John v. Moore, 135 F.3d 770, at *1 (4th Cir. 1998) (per curiam) (unpublished table decision); Stewart v. RCA Corp., 790 F.2d 624, 631 (7th Cir. 1986); Zaidi v. Ehrlich, 732 F.2d 1218, 1220 (5th Cir. 1984) ("When . . . a plaintiff who has a right to amend nevertheless petitions the court for leave to amend, the court should grant the petition.").

Whigham moved for leave to amend the complaint less than 21 days after service of Tands's motion to dismiss Whigham's complaint. See [D.E. 11]. Whigham did not need to ask the court's permission to amend his complaint. See Fed. R. Civ. P. 15(a)(1); Moore, 135 F.3d, at *1; Stewart, 790 F.2d at 631; Zaidi, 732 F.2d at 1220. Thus, the court construes Whigham's motion for leave to amend as the filing of the amended complaint, and construes Tands's response in opposition to Whigham's motion for leave to amend the complaint as a motion to dismiss the proposed amended complaint. See [D.E. 12] 1 n.1.[1]

---

[1] In any event, the futility analysis under Rule 15 is the same as the Rule 12(b)(6) analysis. See Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019); United States ex rel. Ahumada v. NISH, 756 F.3d 268, 274 (4th Cir. 2014); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008); Johnson v. Allen, 416 F. Supp. 3d 550, 562 (E.D.N.C. 2018), aff'd, 784 F. App'x 165 (4th Cir. 2019) (per curiam) (unpublished); Kariuki v. Dep't of Ins., No. 5:18-CV-341, 2019 WL 2559807, at *4 (E.D.N.C. June 20, 2019) (unpublished). Thus, the court's analysis would be the same whether the court considered the amended complaint for futility under Rule 15 or for failure to state a claim under Rule 12(b)(6).

4

## III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citation and quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). But Erickson does not undermine the "requirement that a pleading contain more than labels and conclusions." Giarratano, 521 F.3d at 304 n.5 (cleaned up); see Seabrook v. Driscoll, 148 F.4th 264, 269 (4th Cir. 2025) ("[L]iberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." (cleaned up)). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (citation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In an employment discrimination case, a plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to survive a motion to dismiss. See, e.g., Johnson v. Balt. City, 163 F.4th 808, 814 (4th Cir. 2026); Barnett v. Inova Health Care Servs., 125 F.4th 465, 471 (4th Cir. 2025); Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024); Holloway v. Maryland, 32 F.4th 293, 298 (4th Cir. 2022); Lemon v. Myers Bigel, P.A., 985 F.3d 392, 399 (4th Cir. 2021); Bing v. Bravo Sys., LLC, 959 F.3d 605, 616 & n.8 (4th Cir. 2020); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015). Nonetheless, a

6

plaintiff must plausibly allege a claim for relief under governing law. See, e.g., Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Johnson, 163 F.4th at 814; Barnhill v. Bondi, 138 F.4th 123, 132 (4th Cir. 2025); Barnett, 125 F.4th at 470; Barbour, 105 F.4th at 590; Laurent-Workman v. Wormuth, 54 F.4th 201, 210 (4th Cir. 2022); Holloway, 32 F.4th at 298–301; Nadendla v. WakeMed, 24 F.4th 299, 304–05 (4th Cir. 2022); Bing, 959 F.3d at 616–18; McCleary-Evans, 780 F.3d at 585–86, 588.

A.

In claim one, Whigham brings a Title VII discrimination claim. Title VII prohibits an employer from taking adverse employment action against an employee "because of" an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Whigham does not specifically allege the protected characteristic that forms the basis for the alleged discrimination. See generally [D.E. 11-1]. The court construes Whigham's amended complaint as alleging a race discrimination claim. See id.

To state a race discrimination claim under Title VII, Whigham must plausibly allege that Tands discriminated against him because of his race with respect to his compensation, terms, conditions, or privileges of employment. See, e.g., Kelly v. Town of Abingdon, 90 F.4th 158, 169 & n.6 (4th Cir. 2024); Holloway, 32 F.4th at 299; Bing, 959 F.3d at 616–17; McCleary-Evans, 780 F.3d at 585–86.

A plaintiff may establish a race discrimination claim in two ways. First, a plaintiff can use direct evidence to show that race discrimination motivated interference with a contractual interest, including an adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005). Direct evidence in this context means "conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the

7

contested employment decision." <u>Laing v. Fed. Express Corp.</u>, 703 F.3d 713, 717 (4th Cir. 2013) (cleaned up); <u>see</u> <u>Johnson v. United Parcel Serv., Inc.</u>, 839 F. App'x 781, 784 (4th Cir. 2021) (per curiam) (unpublished). Alternatively, if a plaintiff lacks direct evidence of race discrimination, a plaintiff can proceed under the <u>McDonnell</u> <u>Douglas</u> burden-shifting framework. <u>See</u> <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), <u>overruled on other grounds by</u> <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167 (2009). The <u>McDonnell</u> <u>Douglas</u> framework consists of three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." <u>Guessous v. Fairview Prop. Invs., LLC</u>, 828 F.3d 208, 216 (4th Cir. 2016).

To establish a prima facie case of race discrimination, Whigham must show that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was fulfilling his employer's legitimate expectations at the time of the adverse action, and (4) he was treated differently than a similarly situated employee outside the protected class. <u>See</u>, e.g., <u>Johnson</u>, 163 F.4th at 814–15; <u>Goode v. Cent. Va. Legal Aid Soc'y, Inc.</u>, 807 F.3d 619, 626 (4th Cir. 2015), <u>abrogated in part on other grounds by</u> <u>Bing</u>, 959 F.3d 605; <u>White v. BFI Waste Servs., LLC</u>, 375 F.3d 288, 295 (4th Cir. 2004); <u>Tahir v. Sessions</u>, No. 5:16-CV-781, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), <u>aff'd</u>, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

An adverse employment action under Title VII does not require a "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee

8

must exceed a heightened bar" change in working conditions. <u>Muldrow v. City of St. Louis</u>, 601 U.S. 346, 355 (2024) (cleaned up). Instead, it requires "some harm respecting an identifiable term or condition of employment." <u>Id.</u> Moreover, to "[d]iscriminate against means [to] treat worse." <u>Id.</u> (cleaned up). Thus, an adverse employment action includes a "disadvantageous change to the compensation, terms, conditions, or privileges of employment" because of a protected status. <u>Cole v. Grp. Health Plan, Inc.</u>, 105 F.4th 1110, 1114 (8th Cir. 2024).

Whigham does not plausibly allege a race discrimination claim. Specifically, the amended complaint alleges workplace incidents between Bell, Morris, and Whigham that have nothing to do with race or any other protected status. <u>See, e.g.</u>, <u>Bing</u>, 959 F.3d at 617–19; <u>McCleary-Evans</u>, 780 F.3d at 585–86. Moreover, the amended complaint does not plausibly allege that Tands terminated Whigham's employment because of his race or any other protected status. <u>See Bing</u>, 959 F.3d at 617–19; <u>McCleary-Evans</u>, 780 F.3d at 585–86. Thus, the court dismisses claim one.

In claim two, Whigham brings a Title VII hostile work environment claim. To state a hostile work environment claim under Title VII, an employee must plausibly allege that (1) he experienced unwelcome conduct, (2) the conduct was based on race, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. <u>See, e.g.</u>, <u>Seabrook</u>, 148 F.4th at 271; <u>Cosby v. S.C. Probation, Parole & Pardon Servs.</u>, 93 F.4th 707, 716 (4th Cir 2024); <u>Laurent-Workman</u>, 54 F.4th at 210–12; <u>Chapman v. Oakland Living Ctr.</u>, 48 F.4th 222, 229 (4th Cir. 2022); <u>Perkins v. Int'l Paper Co.</u>, 936 F.3d 196, 207–08 (4th Cir. 2019); <u>Parker v. Reema Consulting Servs., Inc.</u>, 915 F.3d 297, 302 (4th Cir. 2019); <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 277 (4th Cir. 2015) (en banc); <u>Okoli v. City of Balt.</u>, 648 F.3d 216, 220–21 (4th Cir. 2011); <u>EEOC v. Fairbrook Med. Clinic, P.A.</u>, 609 F.3d 320, 327 (4th Cir. 2010); <u>Ziskie v. Mineta</u>,

9

547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Evans v. Capitol Broad. Co., 716 F. Supp. 3d 387, 402–04 (E.D.N.C. 2024). An employee also must plausibly allege that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Seabrook, 148 F.4th at 271; Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993); Evans, 936 F.3d at 192. First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive to alter his conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (citation and quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see Seabrook, 148 F.4th at 272; Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Harris, 510 U.S. at 23; Faragher,

10

524 U.S. at 787–88; <u>Boyer-Liberto</u>, 786 F.3d at 277–78. Title VII does not create a "general civility code for the American workplace." <u>Oncale</u>, 523 U.S. at 80; <u>see</u> <u>Faragher</u>, 524 U.S. at 787–88; <u>Boyer-Liberto</u>, 786 F.3d at 277–81; <u>Irani v. Palmetto Health</u>, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." <u>Faragher</u>, 524 U.S. at 788; <u>see</u> <u>Boyer-Liberto</u>, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. <u>See</u> <u>White</u>, 548 U.S. at 68–69; <u>Breeden</u>, 532 U.S. at 270–71; <u>Faragher</u>, 524 U.S. at 788; <u>cf.</u> <u>Chapman</u>, 48 F.4th at 228–34; <u>Boyer-Liberto</u>, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. <u>See, e.g.</u>, <u>Bonds</u>, 629 F.3d at 385–86; <u>Baqir v. Principi</u>, 434 F.3d 733, 746–47 (4th Cir. 2006); <u>see also</u> <u>Breeden</u>, 532 U.S. at 270–71; <u>Faragher</u>, 524 U.S. at 787–88; <u>Oncale</u>, 523 U.S. at 81–82; <u>cf.</u> <u>Chapman</u>, 48 F.4th at 228–34; <u>Boyer-Liberto</u>, 786 F.3d at 277–81; <u>Walker</u>, 775 F.3d at 207–10; <u>Freeman v. Dal-Tile Corp.</u>, 750 F.3d 413, 420–24 (4th Cir. 2014); <u>Okoli</u>, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." <u>Oncale</u>, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. <u>Id.</u> at 82; <u>Hartsell v. Duplex Prods., Inc.</u>, 123 F.3d 766, 772–73 (4th Cir. 1997).

Although hostile work environment claims often involve repeated conduct, an "isolated

11

incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (cleaned up); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. In assessing the severity of the harassing conduct, harasser's status is an important factor. See Boyer-Liberto, 786 F.3d at 278; Sonnier v. Diamond Healthcare Corp., 114 F. Supp. 3d 349, 356 (E.D. Va. 2015). A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

To impute liability to an employer for an employee's harassment, a plaintiff must demonstrate that "after having acquired actual or constructive knowledge of the allegedly harassing conduct," the employer did not take "prompt and adequate remedial action to correct it." Mikels v. City of Durham, 183 F.3d 323, 329 (4th Cir. 1999) (cleaned up) (collecting cases); see Pryor, 791 F.3d at 498; Freeman, 750 F.3d at 423; EEOC v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011); EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008). As for an employer's remedial actions, employers are required to "take steps reasonably likely to stop the harassment." Bazemore v. Best Buy, 957 F.3d 195, 202 (4th Cir. 2020) (citation omitted); see Xerxes Corp., 639 F.3d at 669. In assessing remedial actions, the court must consider, inter alia, "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective" in stopping the conduct of which plaintiff complains. Xerxes Corp., 639 F.3d at 669; see Bazemore, 957 F.3d at 202; Pryor, 791 F.3d at 498. "[S]o long as discipline is reasonably calculated to end the [offensive] behavior, the exact disciplinary actions lie within [the employer's] discretion." Bazemore, 957 F.3d at 202. "A remedial action that effectively stops the harassment

12

will be deemed adequate as a matter of law." Xerxes Corp., 639 F.3d at 670 (citation omitted); Bazemore, 957 F.3d at 201–02.

Whigham's hostile work environment claim fails because he does not plausibly allege that Bell and Morris engaged in the conduct constituting the hostile work environment because of Whigham's protected characteristic (i.e., his race). See, e.g., Seabrook, 148 F.4th at 271; Gilliam, 474 F.3d at 142. Alternatively, Whigham did not allege a hostile work environment claim in his amended EEOC charge. See [D.E. 1-9] 5. Whigham cannot bring this claim in federal court without raising it first in an EEOC charge. See, e.g., Hoffman v. Inova Health Care Servs., 169 F.4th 207, 218–20 (4th Cir. 2026); Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022); Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012). Thus, the court dismisses claim two.

In claim three, Whigham brings a Title VII retaliation claim. To state a claim, Whigham must plausibly allege that (1) he engaged in protected activity, (2) his employer took some action against him that a reasonable employee would find materially adverse, and (3) his employer took the adverse action because of the protected activity. See, e.g., Barnhill, 138 F.4th at 132; Barbour, 105 F.4th at 590; Massaro v. Fairfax Cnty., 95 F.4th 895, 902 (4th Cir. 2024); Cosby, 93 F.4th at 718; McIver v. Bridgestone Ams., Inc., 42 F.4th 398, 411 (4th Cir. 2022); Walton, 33 F.4th at 177; Holloway, 32 F.4th at 299–300; Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021); Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 653 (4th Cir. 2021); Kitlinski v. U.S. Dep't of Just., 994 F.3d 224, 232 (4th Cir. 2021); Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020); Evans v. Int'l Paper Co., 936 F.3d 183, 195 (4th Cir. 2019); Perkins, 936 F.3d at 213; Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018); Guessous, 828 F.3d at 217; Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 253 (4th Cir. 2015); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Liberto, 786 F.3d

at 281; <u>Balas v. Huntington Ingalls Indus., Inc.</u>, 711 F.3d 401, 410 (4th Cir. 2013); <u>see also</u> <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67–70 (2006); <u>Bonds v. Leavitt</u>, 629 F.3d 369, 384 (4th Cir. 2011).

Title VII protects two kinds of activities: opposition and participation. <u>See</u> <u>Netter v.</u> <u>Barnes</u>, 908 F.3d 932, 937–38 (4th Cir. 2018); <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." <u>DeMasters</u>, 796 F.3d at 417 (citation omitted); <u>see</u> <u>Netter</u>, 908 F.3d at 937–38; <u>Boyer-Liberto</u>, 786 F.3d at 282; <u>Laughlin</u>, 149 F.3d at 259. The opposition clause applies when an employee "opposes not only employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful [under Title VII]." <u>DeMasters</u>, 796 F.3d at 417 (cleaned up); <u>see</u> <u>Netter</u>, 908 F.3d at 937–38; <u>Boyer-Liberto</u>, 786 F.3d at 282. The participation clause protects employees making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. <u>See</u> 42 U.S.C. § 2000e-3(a); <u>Laughlin</u>, 149 F.3d at 259.

"To establish a causal relationship between the protected activity and the [adverse action], a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." <u>Roberts</u>, 998 F.3d at 124. An employee cannot demonstrate a causal connection between protected activity and the employer's adverse action without alleging that the decisionmaker who took the adverse action knew that the employee had engaged in protected activity. <u>See</u> <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 218 (4th Cir. 2007); <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 278 (4th Cir. 2001); <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998), <u>abrogated on other grounds by</u> <u>White</u>, 548 U.S.

14

53; see also Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); Gestamp S.C., LLC. v. NLRB, 769 F.3d 254, 261–62 (4th Cir. 2014).

Courts also consider the temporal proximity between an employer's knowledge of protected activity and an adverse action. See, e.g., Breeden, 532 U.S. at 273–74; Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). An adverse action taken shortly after an employer learned of protected activity typically permits a reasonable inference of causation. See, e.g., Massaro, 95 F.4th at 902–03; Dowe, 145 F.3d at 657. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, [however,] . . . negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (finding three years too long to infer causation); see Breeden, 532 U.S. at 274 (same for 20 months); Colley v. ISS Facility Servs., Inc., No. 24-1320, 2025 WL 1743498, at *1–2 (4th Cir. June 24, 2025) (per curiam) (unpublished) (same for four months); Barnhill, 138 F.4th at 132–35 (same for six months); Cosby, 93 F.4th at 721–22 (same for six years); Massaro, 95 F.4th at 902 (same for 18 months); Roberts, 998 F.3d at 126 (same for three months); Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017) (same for eight to nine months); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (same for 13 months). A plaintiff can rebut this conclusion about time lapse by plausibly alleging that his employer's actions taken during the intervening period demonstrate retaliatory animus. See Barbour, 105 F.4th at 593–600; Massaro, 95 F.4th at 902–03; Alberti v. Rector & Visitors of the Univ. of Va., 65 F.4th 151, 156 (4th Cir. 2023); Walton, 33 F.4th at 177–78; Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Whigham's retaliation claim fails because he does not plausibly allege that he engaged in protected activity. See DeMasters, 796 F.3d at 417; Netter, 908 F.3d at 937–38; Boyer-Liberto,

15

786 F.3d at 282; <u>Laughlin</u>, 149 F.3d at 259.  Moreover, Whigham does not plausibly allege that he reasonably believed Bell's and Morris's conduct violated Title VII or that the Tands's decisionmaker was aware that Whigham engaged in any protected activity under Title VII before terminating his employment.  Thus, the court dismisses claim three.

In claim four, Whigham brings an OSHA retaliation claim.  OHSA does not provide a private right of action for retaliation.  <u>See</u> <u>Scarborough v. Aegis Commc'ns Grp., Inc.</u>, 217 F.3d 840, at *1 (4th Cir. 2000) (per curiam) (unpublished table decision); <u>Albrecht v. Balt. & Ohio R.R.</u>, 808 F.2d 329, 332–33 (4th Cir. 1987); <u>Johnson v. Interstate Mgmt. Co.</u>, 849 F.3d 1093, 1096–98 (D.C. Cir. 2017) (Kavanaugh, J.); <u>Elliott v. S.D. Warren Co.</u>, 134 F.3d 1, 4 (1st Cir. 1998).  Thus, the court dismisses claim four.

B.

Tands removed the action to this court based on federal question jurisdiction.  <u>See</u> [D.E. 1] 1–3.  The court has dismissed Whigham's federal claims.  The court declines to exercise supplemental jurisdiction over Whigham's state-law claims and remands the action to Nash County Superior Court.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Royal Canin U.S.A., Inc. v. Wullschleger</u>, 604 U.S. 22, 31–32 (2025); <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Kovachevich v. Nat'l Mortg. Ins. Corp.</u>, 140 F.4th 548, 556 (4th Cir. 2025); <u>Henderson v. Harmon</u>, 102 F.4th 242, 251 (4th Cir. 2024); <u>ESAB Grp., Inc. v. Zurich Ins. PLC</u>, 685 F.3d 376, 394 (4th Cir. 2012); <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995).

IV.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 6, 12], DENIES AS MOOT plaintiff's motion for leave to amend the complaint [D.E. 11], DECLINES to exercise

16

supplemental jurisdiction over plaintiff's state-law claims, and REMANDS the action to Nash County Superior Court.

SO ORDERED. This _7_ day of April, 2026.

JAMES C. DEVER III
United States District Judge

17